**Keith Morrell MURPHY, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–93–003–CR.**

Court of Appeals of Texas, Fort Worth.

July 30, 1993.

Sonya Kapp, Wichita Falls, for appellant.

Barry L. Macha, Dist. Atty., John W. Brasher, Scott E. Stephenson, Michael Curtis, Asst. Dist. Attys., Wichita Falls, for appellee.

Before HILL, C.J., and DAY and FARRAR, JJ.

## OPINION

FARRAR, Justice.

Appellant, Keith Morrell Murphy, was charged with murder and found guilty of voluntary manslaughter. A jury sentenced him to twenty years confinement and a ten thousand dollar fine. He appeals his punishment by two points of error.

We sustain his first point of error and reverse and remand for a new punishment hearing.

At Murphy's trial, Reverend J.C. Thompson testified that while he was painting the top of his church building, he saw Murphy arguing with a girl. During this argument, a third person appeared at the scene, argued with Murphy, and pulled a gun. Murphy ran down the street to his car, pulled out a .25 automatic, turned back, and fired four times. Reverend Thompson then saw Murphy and the third person drive off in separate cars. At this point, the Reverend's son ran up and told him that a neighbor was having a heart attack. The fire department responded to this emergency, but the man died before they arrived. According to one of the firemen, the man showed no signs of having had a heart attack. After he was taken to the hospital, the doctor who examined him found a bullet wound which began in his right hip, penetrated his abdomen, and caused internal bleeding. According to the doctor, this wound was the cause of death.

After the shooting, Murphy drove back by the neighborhood and saw the paramedics at the man's house. At that time, he heard that the man was having a heart attack and he was afraid the shooting scared the man. The next day, he found out that the man had been shot. He was afraid that the man had been shot by a bullet from his gun so he went to speak to the police. He told them that it was possible that he had shot the man but that he never intended to shoot him. From this testimony, the jury found Murphy guilty of voluntary manslaughter.

At the punishment phase of the trial, the State introduced evidence that Murphy was "adjudicated delinquent" as a juvenile. Murphy had previously been adjudicated delinquent for committing a misdemeanor. He was then placed on probation. A term of his probation was that he "commit no offense against the laws of the State of Texas. . . ." Subsequently, Murphy violated this term so his probation was revoked, his disposition [1] was modified, and he was committed to the Texas Youth Commission. Specifically, in the order modifying disposition, the juvenile court found:

> That within the period of said probation, the said child violated the terms and conditions thereof in the following particulars: that on or about May 27, 1990, in Wichita Falls, Wichita County, Texas, the said child did then and there, *intentionally and knowingly use a deadly weapon*, to wit: a handgun and did then and there *intentionally and knowingly cause bodily injury* to [S.J.] by shooting the body of the said [S.J.] [emphasis added.]

Because of the finding that Murphy had committed aggravated assault, the trial court admitted into evidence the revocation of probation order, the modification of disposition

---

1. The word "disposition," when used in a juvenile setting, replaces such terms as "sentence" or "punishment." The explanation for this is that, ideally, the juvenile justice system is rehabilitative, so at its inception the criminal justice system's vocabulary was "discarded and replaced by more palatable terminology." *Lanes v. State*, 767 S.W.2d 789, 791–92 (Tex.Crim.App.1989).

order, and the commitment order as proof that Murphy had been adjudicated delinquent based upon a felony violation. The trial court also allowed Murphy's probation officer to testify that Murphy had previously been adjudicated delinquent based upon a felony.

■ In Murphy's first point of error, he argues that the trial court erred when it admitted evidence of his adjudication of delinquency. In his second point of error, Murphy contends that the trial court erred when it allowed a police officer to testify during punishment to Murphy's reputation in the community without the proper predicate being laid. We agree with Murphy that the evidence of his adjudication of delinquency was erroneously admitted so we sustain his first point of error. Because we sustain Murphy's first point of error, we do not address his second point of error.

Normally, evidence of a juvenile adjudication is not admissible. TEX.R.CRIM.EVID. 609(d). Nevertheless, the Code of Criminal Procedure allows the admission of "an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of felony." TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1993); see TEX. FAM.CODE ANN. § 51.13(b) (Vernon 1986). The State argues this exception is met here because Murphy was adjudicated delinquent and then had his probation revoked when the juvenile court found that he committed a felony. We disagree with the State because Murphy was only adjudicated delinquent based upon a misdemeanor violation; therefore, the subsequent revocation of probation and modification of disposition was not an adjudication of delinquency based upon a felony violation within the statutory meaning of the term.

The Texas Legislature did not define "adjudication of delinquency" in TEX.CODE CRIM. PROC.ANN. art. 37.07 § 3(a). But, section 54.03 of the Texas Family Code governs adjudications of delinquency. TEX.FAM.CODE ANN. § 54.03(a) (Vernon 1986). It states:

A child may be found to have engaged in delinquent conduct or conduct indicating a need for supervision *only after an adjudi-*

*cation hearing conducted in accordance with the provisions of this section.*

*Id.* (emphasis added).

■ First, we note that before a court has the authority to hold an adjudication hearing, a petition for an adjudication hearing must be filed. *Matter of S.H.*, 846 S.W.2d 103, 106 (Tex.App.—Corpus Christi 1992, no writ); TEX.FAM.CODE ANN. § 53.04 (Vernon 1986 & Supp.1993). Once a court has this authority, TEX.FAM.CODE ANN. § 54.03 provides that the court must explain the juvenile's rights and privileges at the beginning of the adjudication hearing. TEX. FAM.CODE ANN. § 54.03(b) (Vernon Supp. 1993); *accord Matter of Cooper*, 623 S.W.2d 507, 508 (Tex.App.—Fort Worth 1981, no writ); *Matter of J.D.P.*, 691 S.W.2d 106, 107 (Tex.App.—San Antonio 1985, no writ). This includes: 1) the allegation made against the juvenile; 2) the nature and possible consequences of the proceedings, *"including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding; "* 3) the juvenile's privilege against self incrimination; 4) the juvenile's right to trial and to confrontation of witnesses; 5) the juvenile's right to representation by an attorney if he is not already represented; and 6) the juvenile's right to a trial by jury. TEX.FAM.CODE ANN. § 54.03(b) (Vernon Supp.1993) (emphasis added); *accord Matter of R.B.*, 697 S.W.2d 826, 828 (Tex.App.—Corpus Christi 1985, no writ); *Matter of N.S.D.*, 555 S.W.2d 807, 808 (Tex. App.—El Paso 1977, no writ).

■ The lack of an explanation of the juvenile's rights places due process in jeopardy. For example, without knowing that an adjudication of delinquency can be used later (if it is based upon a felony) the juvenile cannot knowingly and voluntarily enter a plea because the juvenile does not know the legal consequences of the plea. *Matter of F.M.*, 792 S.W.2d 564, 565 (Tex.App.—Amarillo 1990, no writ); *accord Matter of P.L.W.*, 851 S.W.2d 383, 385 (Tex.App.—San Antonio 1993, no writ); *Matter of L.T.*, 848 S.W.2d 769, 772 (Tex.App.—Corpus Christi 1993, no writ); *Matter of G.K.G.*, 730 S.W.2d 182, 184 (Tex.App.—San Antonio 1987, no writ); *I.G. v. State*, 727 S.W.2d 96, 99 (Tex.App.—San

Antonio 1987, no writ). We note that the year the legislature amended TEX.CODE CRIM. PROC.ANN. art. 37.07 § 3(a) allowing this evidence in the punishment phase of a criminal trial, was the same year it amended TEX.FAM. CODE ANN. § 54.03(b) and required courts to admonish juveniles of this exact consequence. *See* Act of May 27, 1987, 70th Leg., R.S., ch. 385, §§ 8, 19, 1987 Tex.Gen.Laws 1891, 1894, 1898; Act of May 26, 1987, 70th Leg., R.S., ch. 386 § 3, 1987 Tex.Gen.Laws 1899, 1900.

After a court adjudicates a juvenile delinquent, it must then have a disposition hearing. TEX.FAM.CODE ANN. § 54.04 (Vernon Supp.1993). At this hearing there is no right to a jury, unless the delinquency petition alleges that the juvenile committed: 1) murder; 2) capital murder; 3) aggravated kidnapping; 4) aggravated sexual assault; 5) deadly assault on a law enforcement officer, corrections officer or court participant; or 6) attempted capital murder. TEX.FAM.CODE ANN. §§ 53.045(a), 54.04(a) (Vernon Supp. 1993). If the court adjudicates the juvenile delinquent of an offense other than those listed above it has the choice of placing that juvenile on probation or committing that juvenile to the Texas Youth Commission. TEX. FAM.CODE ANN. § 54.04(d) (Vernon Supp. 1993).

 Any disposition based on a finding that the juvenile engaged in delinquent conduct, other than one which already committed the juvenile to the Texas Youth Commission, may be modified after a juvenile court holds a hearing to modify disposition. TEX. FAM.CODE ANN. § 54.05(a), (f), (h) (Vernon 1986 and Supp.1993). There is no right to a jury at this hearing. TEX.FAM.CODE ANN. § 54.05(c) (Vernon 1986). This is constitutional because the juvenile whose disposition is being modified was already given the opportunity for a jury trial *when the juvenile was adjudicated delinquent;* the juvenile's commitment for that delinquency was merely indefinitely postponed. *Matter of A.M.B.,* 676 S.W.2d 448, 451 (Tex.App.—Houston [1st Dist.] 1984, no writ) (noting that an adult whose probation is revoked "does not go to the penitentiary for violation of probation, but because of his original conviction").

 The hearing to modify disposition is not a new adjudication of delinquency under 54.03. *J.K.A. v. State,* 855 S.W.2d 58, 60–61, 64 (Tex.App.—Houston [14th Dist.] 1993, writ filed); *Matter of J.B.S.,* 696 S.W.2d 223, 225 (Tex.App.—San Antonio 1985, no writ) (the adjudication hearing provided by the modification procedure affords the protection of a confrontational trial but is not a new adjudication hearing within the meaning of section 54.03). It necessarily follows that an order "modifying disposition" does not upgrade a delinquency based upon a misdemeanor violation to one based upon a felony violation. Instead, it merely revokes probation and commits the juvenile to the Texas Youth Commission as punishment for the delinquency based upon a misdemeanor.

This is what occurred in Murphy's case. The evidence shows that he was adjudicated delinquent based upon a misdemeanor and placed on probation. Subsequently, he was afforded a hearing to revoke and *modify* his probation and he was committed to the Texas Youth Commission. The record reflects no petition to adjudicate Murphy delinquent based upon a felony. Instead, the decretal portion of the order revoking probation reads:

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the probation *heretofore granted* to the child in th[is] cause be and the same is hereby revoked; that the finding of delinquent conduct *heretofore made* in this cause be and the same hereby is made a final finding; and the said Keith Morrell Murphy be and hereby is committed to the care, custody, and control of the Texas Youth Commission in accordance with Section 61 of V.T.C.A. Human Resources Code. [Emphasis added.]

While the juvenile court found that Murphy violated probation because it found that Murphy committed a felony, this finding was the result of a modification hearing which was not a new adjudication of delinquency. Murphy was not warned of his rights and privileges, nor was he warned of the law relating to admissibility of the adjudication in criminal proceedings. He had no right to a jury in the modification hearing because he was

already afforded that right when he was adjudicated delinquent based upon the misdemeanor violation. For all of these reasons, the finding that Murphy committed a felony was not the result of an adjudication hearing conducted in accordance with the provisions of TEX.FAM.CODE ANN. § 54.03. Because there was no such adjudication, Murphy could not have been found to have engaged in delinquent conduct based upon a felony violation. Accordingly, he was not adjudicated delinquent based upon a felony violation within the meaning of TEX.CODE CRIM.PROC. ANN. art. 37.07 § 3(a) and the trial court erroneously admitted evidence of his adjudication of delinquency which was based on a misdemeanor violation.

Because the trial court erred in admitting this evidence we must determine whether the error calls for reversal of the conviction, applying TEX.R.APP.P. 81(b)(2). *See Harris v. State,* 790 S.W.2d 568, 584 (Tex.Crim.App.1989). This rule states:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2).

Our harmless error analysis must focus upon the error, rather than the propriety of the outcome of the trial; trace its probable impact upon the jury; and determine whether it contributed to the conviction or punishment. *Harris,* 790 S.W.2d at 585–87. Such a review concentrates on the fairness of the trial and the integrity of the process. *Id.* We consider the source and nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, the weight a juror would probably place upon the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Id.* at 587.

This requires an evaluation of the entire record in a neutral, impartial and even-handed manner, not in the light most favorable to the prosecution. *Id.* at 586. There is no formula by which we can perform a harmless error analysis but, generally, we first isolate the error and its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 587–88. If we are unable to determine beyond a reasonable doubt that the error did not contribute to the punishment, we must reverse. *Id.* at 584.

First, we note that Murphy did not have an adult record for the purpose of enhancement. But, because of the circumstances of the crime he committed, an important question for punishment was his tendency to behave violently. In closing argument, the prosecutor emphasized the adjudication of delinquency, saying: "What does that tell you about this man?" Later, he argued "[h]e's a violent man" and reminded the jury that the probation officer testified that after Murphy's probation was revoked he was committed to the "Giddings State School, that's where they send the violent juveniles." This demonstrates the fact that the inadmissible evidence was emphasized by the State, the jury probably considered the inadmissible evidence when determining punishment, and it is likely that they placed a great deal of weight on the inadmissible evidence. Because of these factors, we are unable to determine beyond a reasonable doubt that the error did not contribute to the punishment, so we sustain Murphy's first point of error.

We hold that the juvenile court's orders revoking probation, modifying disposition, and committing Murphy to the Texas Youth Commission did not adjudicate him delinquent based upon a felony violation. For this reason, we hold that the trial court erred when it allowed the State to introduce this evidence in the punishment phase of trial. Further, we hold that such error was harmful because we cannot determine beyond a reasonable doubt that the error did not contribute to the punishment.

The trial court's judgment as to punishment is reversed and this cause is remanded for a new punishment hearing pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.29 (Vernon Supp.1993).