

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00099-CR

_____

BRYAN ARRIAGA, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1523268D

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Bryan Arriaga appeals his conviction and forty-five-year sentence for aggravated robbery with a deadly weapon (a firearm). In eight points, Arriaga argues (1) that the State failed to provide him with proper notice that it was seeking to enhance the punishment range in this case, (2) that the enhancement statute that allows for some prior juvenile adjudications to be used to enhance punishment violates the Eighth Amendment's prohibition against cruel and unusual punishment, (3) that the trial court imposed his sentence based on an improper sentencing range, (4) that the trial court considered evidence outside the record when it imposed its sentence, (5) that the trial court abused its discretion by admitting certain photographs and (6) by admitting his videotaped confession, (7) that the trial court erred by failing to instruct the jury on the voluntariness of his confession, and (8) that the trial court failed to file written findings of fact and conclusions of law regarding the voluntariness of his confession. We will affirm.

## II. BACKGROUND

The primary facts of this case are not in dispute. Thus, we will address the factual background only briefly to give context to Arriaga's points on appeal. In November 2017, Arriaga and his brother lured Jacob Bateman to a park in Arlington under the guise of purchasing Bateman's PlayStation 4 gaming system. Once Bateman arrived at the park, Arriaga and his brother approached him, and Arriaga

pointed a gun at Bateman as Arriaga's brother knocked Bateman's phone out of his hand and then retrieved the PlayStation 4 from Bateman's vehicle. After grabbing the PlayStation 4, Arriaga's brother ran away. Arriaga then shot Bateman twice, both times in the abdomen area, and one of the bullets grazed a finger on Bateman's right hand before lodging in his side. Arriaga fled after the shooting.

Emergency personnel soon transported Bateman to the hospital where he underwent surgery. Bateman survived the shooting even though surgeons were unable to remove the bullets from his body. Police later arrested Arriaga, and while in custody, he made a videotaped confession.

Later, on February 9, 2018, the State charged Arriaga with aggravated assault with a deadly weapon (a firearm). On May 17, 2018, the State filed a "Notice of Intent to Seek Punishment Enhancement." The notice stated,

> REPEAT OFFENDER NOTICE: AND IT IS FURTHER PRESENTED TO SAID COURT THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF BURGLARY OF A HABITATION, IN THE 323RD DISTRICT COURT OF TARRANT COUNTY, TEXAS, IN CAUSE NUMBER 103070-J, ON THE 6TH DAY OF JULY, 2016[.]

On February 21, 2019, Arriaga filed a "Motion to Declare Tex. Pen. Code 12.42(f) Unconstitutional and to Quash 'Brooks' Notice." In the motion, Arriaga argued that the State had served him with notice that it was intending to seek enhancement of the penalty range for aggravated assault with a deadly weapon based on a prior juvenile

adjudication that occurred when he was sixteen years old and that the enhancement violated the Eighth Amendment's prohibition against cruel and unusual punishment.

At trial, as the State requested to introduce the videotaped confession, Arriaga moved to suppress on the theory that the confession was made involuntarily. After conducting the suppression hearing outside the presence of the jury, the trial court denied Arriaga's suppression motion and made oral findings of fact and conclusions of law, which the court reporter recorded. The State introduced and published for the jury Arriaga's confession.

Ultimately, a jury found Arriaga guilty of aggravated assault with a deadly weapon (a firearm). At the punishment phase, the trial court heard punishment evidence, and Arriaga pleaded "true" to the State's enhancement allegation. The trial court sentenced Arriaga to forty-five years' confinement. This appeal followed.

## III. DISCUSSION

Because Arriaga's first three points address issues regarding the sentencing range being elevated in this case based on a prior juvenile adjudication, we will address these three points together. We will then address Arriaga's remaining points in turn.

### A. The Law Pertaining to Juvenile Enhancements

In 1995, the Legislature provided that under certain circumstances a felony adjudication in juvenile court can be used as a prior felony conviction for enhancement of punishment in later criminal proceedings. *See* Tex. Penal Code Ann. § 12.42(f); Tex. Fam. Code Ann. § 51.13(d). The provision applies only if the juvenile

4

received a commitment or sentence to the Texas Youth Commission for the felony adjudication. *See* Tex. Penal Code Ann. § 12.42(f); Tex. Fam. Code Ann. § 51.13(d). It does not apply if the felony adjudication was for a state jail felony. *See* Tex. Penal Code Ann. § 12.42(a).

The juvenile judgment against Arriaga for burglary of a habitation was a conviction of a second-degree felony for enhancement purposes. *See* Tex. Penal Code Ann. § 30.02(a)(1), (c)(2). Therefore, when the trial court found the alleged juvenile enhancement to be true, the otherwise first-degree felony of aggravated assault with a deadly weapon (carrying with it a sentencing range of not more than 99 years or less than 5 years) became a repeat-first-degree-felony offense with a punishment range of imprisonment for life or a term of not more than 99 years or less than 15 years. *See* Tex. Penal Code Ann. §§ 12.32, 12.42(c)(1), 29.03.

### 1. Notice of Enhancement

In part of his first point, Arriaga argues that the State failed to provide proper notice of his former juvenile adjudication for burglary of a habitation, and thus the trial court erred by enhancing the range of punishment on his aggravated robbery conviction.[1] We disagree.[2]

---

[1]Even though Arriaga cites authority regarding cases involving habitual-allegation enhancements, this case involves a repeat allegation and not a habitual allegation. *Compare Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987) (addressing issue of habitual-offender notice), *with Crawford v. State*, 496 S.W.3d 334, 344 (Tex. App.—Fort Worth 2016, pet. ref'd) (addressing issue of repeat-offender notice).

5

The right to notice of the State's intention to use a prior conviction for enhancement purposes is rooted in due process. *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006). Under a due process analysis, the issue is "whether appellant received sufficient notice of the enhancements so that he had an opportunity to prepare a defense to them." *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010). When the State seeks to enhance a defendant's punishment with evidence of a prior conviction, "'[t]he accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial of the question of whether he is the named convict therein. . . . and if possible show there is a mistake in identity, or that there was no final former conviction or the like.'" *Villescas*, 189 S.W.3d at 293 (quoting *Hollins v. State*, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)). Allegations of a prior conviction for enhancement purposes should include the court in which the conviction was obtained, the time of the conviction, and the nature of the offense. *See Cole v. State*, 611 S.W.2d 79, 80 (Tex. Crim. App. [Panel Op.] 1981); *Hollins*, 571 S.W.2d at 876. Prior convictions used as enhancements must be pled in some form, but they need not be pled in the

---

[2]The State argues that Arriaga has failed to preserve his sentencing argument for our review. Given the Texas Court of Criminal Appeals' recent unpublished opinion in *Hestand v. State*, No. PD-0513-19, 2019 WL 5784183, at *1 (Tex. Crim. App. Nov. 6, 2019) (not designated for publication), and given the similarities between *Hestand* and this case, we will address the issue on the merits.

indictment—although it is permissible and perhaps preferable to do so. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).

Here, the State's enhancement notice indicated the court where Arriaga was adjudicated for burglary of a habitation. The enhancement notice also stated the date on which the conviction occurred, and it identified the conviction by its trial court cause number. Thus, the State satisfied its burden of informing Arriaga of the court of conviction, the time of conviction, and the nature of the offense. *See Cole*, 611 S.W.2d at 80; *see also Hudson v. State*, 145 S.W.3d 323, 326 (Tex. App.—Fort Worth 2004, pet. ref'd) ("Here, the State's notice, which included evidence of three prior felony convictions, each specified by cause number, classification of offense, county of conviction, and date of conviction, was a sufficient pleading that gave notice of the prior convictions that would be used for enhancement of punishment.").

Arriaga argues that the State did not properly notify him because the enhancement notice stated that the enhancement felony had been committed "prior to the commission of the offense or offenses set out above," and the notice itself did not contain a description of "the offense . . . set out above." But as the State points out, the only logical offense "set out above" was the charge of aggravated robbery with a deadly weapon that Arriaga was facing in this case. Indeed, the State filed its notice under the cause number associated with the aggravated robbery charge, and the trial court clerk made the notice part of the clerk's record. Furthermore, Arriaga, in his motion to quash the enhancement notice, was able to identify the adjudication

7

with enough specificity to challenge the constitutionality of the statute that allowed the use of the prior adjudication. Given that Arriaga was informed enough to attack the use of the prior adjudication, the State adequately informed Arriaga of the prior adjudication which "enable[d] him to find the record and make preparation for a trial on the question of whether he [was] the named convict therein." *Villescas*, 189 S.W.3d at 293.

Additionally, this court has already held that an enhancement notice with substantially similar language to the language found in the enhancement notice in this case adequately notified the defendant of the prior conviction. *Meyer v. State*, No. 02-15-00217-CR, 2016 WL 7487756, at *1 (Tex. App.—Fort Worth Dec. 30, 2016, pet. ref'd) (mem. op., not designated for publication). In *Meyer*, the State's enhancement notice provided,

> Comes now the State of Texas, by and through her Assistant Criminal District Attorney, Zane Reid, and files this notice of intention to enhance the punishment range to a 90 day minimum jail sentence using a prior Felony conviction or prior Class A Misdemeanor conviction, pursuant to [S]ection 12.43 of the Texas Penal Code, and would show the court the following:
>
> I.
>
> Before the commission of the offense alleged above:
>
> 1. The Defendant was convicted of Criminal Trespass (of a habitation-class A) on or about July 12, 2000 in Denton County, Texas in Cause No. 2000–02145–B.

*Id.* at *2.

The State's enhancement notice in *Meyer* was not part of the State's charging instrument, and the "offense alleged above" referenced the State's charging instrument wherein the State had charged Meyer with driving while intoxicated. *Id.* Similar to our holding in *Meyer*, we conclude that the use of the language "the offense . . . set out above" in the State's notice enhancement in this case did not prevent Arriaga from being able to identify the adjudication that the State was alleging as an enhancement and that the State gave Arriaga proper notice of its intention to use the prior adjudication. We overrule this portion of Arriaga's first point.

In the remainder of his first point, Arriaga argues that the evidence is insufficient to support the enhancement. We disagree.

The State has the burden of proof to show that any prior conviction used to enhance a sentence was final under the law and that the defendant was the person previously convicted of that offense. *Flowers v. State*, 220 S.W.3d 919, 922 (Tex. Crim. App. 2007). The State's obligation in this regard is to make a prima facie showing that the prior conviction used for enhancement is valid. This may be done by introducing the prior judgment and sentence. The burden then shifts to the defendant to prove that it is void and unavailable for enhancement. *Johnson v. State*, 583 S.W.2d 399, 403 (Tex. Crim. App. [Panel Op.] 1979). If, however, a defendant pleads "true" to the enhancement paragraph, the State's burden of proof is satisfied and a defendant cannot complain on appeal that the evidence is insufficient to support the

9

enhancement. *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *Lugo v. State*, 299 S.W.3d 445, 455–56 (Tex. App.—Fort Worth 2009, pet. ref'd).

In this case, both the judgment and the reporter's record reflect that Arriaga pleaded "true" to the enhancement allegation concerning his prior adjudication for burglary of a habitation. Thus, Arriaga is foreclosed from complaining on appeal that the evidence is insufficient to support the enhancement. *See Wilson*, 671 S.W.2d at 526 (reasoning that a plea of "true" constitutes sufficient evidence to support an enhancement allegation). We overrule the remainder of Arriaga's first point.

### 2.    The Constitutionality of Section 12.42(f)

In his second point, Arriaga argues that the "trial court erred in sentencing [him] based [on] a sentencing range determined by consideration of a prior juvenile adjudication." Specifically, Arriaga contends that Texas Penal Code Section 12.42(f)—the statute that delineates certain juvenile adjudications that result in the juvenile being committed to certain correctional facilities be treated as final felony convictions for enhancement purposes—is unconstitutional in that it violates the Eighth Amendment's prohibition against cruel and unusual punishment. U.S. Const. Amend. VIII. Although Arriaga does not use the term, it is clear that he is making a facial challenge to the constitutionality of Section 12.42(f).

Citing the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012), and *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010), Arriaga contends that this court should hold Section 12.42(f)

unconstitutional because juveniles possess a "diminished culpability and greater prospects for reform [and] are less deserving of the most severe punishments" and that "children are constitutionally different from adults for purposes of sentencing."

We note initially that while we agree that *Miller* and *Graham* both acknowledge that juveniles are considered differently than adults for sentencing purposes, *Miller* and *Graham* operate only to prohibit the imposition of confinement for life without the possibility of parole on offenders who were under the age of eighteen when their crimes were committed. *Miller*, 567 U.S. at 471, 132 S. Ct. at 2463; *Graham*, 560 U.S. at 55, 130 S. Ct. at 2019; *see also Roper v. Simmons*, 543 U.S. 551, 552, 125 S. Ct. 1183, 1185 (2005) (applying similar rationale in holding that imposing the death penalty on juveniles is unconstitutional). In those cases, the Supreme Court "likened life without parole for juveniles to the death penalty." *Miller*, 567 U.S. at 470, 132 S. Ct. at 2463. And the Supreme Court had previously stated that the "penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability." *Harmelin v. Michigan*, 501 U.S. 957, 995–96, 111 S. Ct. 2680, 2702 (1991) (quoting *Furman v. Georgia*, 408 U.S. 238, 306, 92 S. Ct. 2726, 2760 (1972) (Stewart, J., concurring)). In contrast, Texas's enhancement scheme is not the type of unique and irrevocable type of punishment that the Supreme Court addressed in either *Miller* or *Graham*. *See Gamble v. State*, No. 01-06-01028-CR, 2008 WL 2548512, at *8 (Tex. App.—Houston [1st Dist.] June 26, 2008, pet. ref'd) (mem. op., not

11

designated for publication) (reasoning that the concerns in *Roper* are not present in Texas's enhancement scheme).

When an appellate court reviews the constitutionality of a statute, it is to presume the statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting it. *Ex parte Flores*, 130 S.W.3d 100, 106 (Tex. App.—El Paso 2003, pet. ref'd). The burden rests on the appellant to establish the statute as unconstitutional. *Id.* Moreover, as an intermediate appellate court, we must follow binding precedent of the Texas Court of Criminal Appeals. *McKinney v. State*, 177 S.W.3d 186, 192 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006).

In other contexts, the Court of Criminal Appeals has long upheld the enhancement statute against all constitutional challenges, including several cruel and unusual punishment claims. *See Thomas v. State*, 543 S.W.2d 645, 647 (Tex. Crim. App. 1976); *Armendariz v. State*, 529 S.W.2d 525, 527 (Tex. Crim. App. 1975); *Thrash v. State*, 500 S.W.2d 834, 836 (Tex. Crim. App. 1973). Arriaga cites to no cases holding that the use of a juvenile adjudication as an enhancement is unconstitutional or explaining why the reasoning in *Miller* or *Graham* applies in a non-life-without-parole context. In short, Arriaga has failed to show that the use of a juvenile adjudication statutorily defined as a final felony conviction for enhancement purposes violates the Eighth Amendment. *See Gamble*, 2008 WL 2548512, at *8 (declining to hold Section 12.42(f)

12

unconstitutional where appellant cited no cases holding that the use of a juvenile adjudication as an enhancement violated Supreme Court precedent).

Arriaga argues that under *United States v. Tighe*, 266 F.3d 1187, 1193 (9th Cir. 2001), his prior juvenile adjudication cannot be treated as a prior conviction for enhancement purposes because he was not entitled to a jury trial when he was adjudicated delinquent.[3]  But Arriaga's reliance on *Tighe* is misplaced.  *Tighe* grappled with the question of whether "prior juvenile adjudications, *which do not afford the right to a jury trial*" can be considered for enhancement purposes.  *Id.* (emphasis added).

Attempting to make his argument fit under *Tighe*, Arriaga argues that he was not entitled to a jury and cites Texas Family Code Section 54.04(a) and Texas Penal Code Section 12.42(f).  Tex. Fam. Code Ann. § 54.04(a); Tex. Penal Code Ann. § 12.42(f).  Section 54.04(a) states that "[t]here is no right to a jury at the disposition hearing . . . ."  Tex. Fam. Code Ann. § 54.04(a).  Section 12.42(f) states that "an *adjudication* by a juvenile court . . . is a final felony conviction."  Tex. Penal Code Ann.

---

[3]In his opening brief, Arriaga cited *Tighe* for the proposition that "[j]uvenile adjudications" that do not afford a jury trial and a beyond-a-reasonable doubt burden of proof cannot be used as a "prior conviction" for enhancement purposes.  As discussed below, in his reply brief, Arriaga argues that we are to look at the fact that he was not entitled to a jury trial at the "disposition" phase when addressing his claim that Section 12.42(f) is unconstitutional.  As noted, Arriaga cites no authority for this proposition.  There is, however, authority to support that the lack of right to a jury during disposition phase of juvenile proceedings is constitutional.  *See Murphy v. State*, 860 S.W.2d 639, 643 (Tex. App.—Fort Worth 1993, no pet.) (reasoning that no right to a jury at modified disposition phase of juvenile proceeding was constitutional "because the juvenile whose disposition is being modified was already given the opportunity for a jury trial *when the juvenile was adjudicated delinquent*").

13

§ 12.42(f) (emphasis added). Arriaga, without citing any authority to support the proposition, argues that because of these two statutes, it is the disposition phase, not the adjudication phase, of the juvenile proceedings that determines whether the juvenile adjudication can be considered for enhancement purposes. But Arriaga's dependence on the interplay between these two statutes is improper because under Texas Family Code Section 54.03(a), Arriaga was entitled to a jury at his adjudication hearing that statutorily must have taken place prior to the disposition hearing. *See id.* §§ 54.03(a) ("At the conclusion of the adjudication hearing, the court or jury shall find whether or not the child has engaged in delinquent conduct or conduct indicating a need for supervision."), 54.04(a) ("The disposition hearing shall be separate, distinct, and subsequent to the adjudication hearing.").

Indeed, the record clearly demonstrates that when Arriaga was adjudicated delinquent for having burglarized a habitation, he was afforded a hearing where he chose to waive his right to a jury trial. Thus, *Tighe* simply does not apply to the facts of this case. We overrule Arriaga's second point.

### 3. Sentencing Range

In his third point, which Arriaga admits is predicated on this court sustaining one of his first two points, he argues that the trial court considered the incorrect range of punishment and that without enhancement, the minimum sentence was five years and not fifteen. Because we have overruled both of Arriaga's first two points, we overrule his third point as well.

14

## B.      The Admissibility of Certain Evidence

In his fourth point, Arriaga argues that the trial court abused its discretion by allowing the State to introduce two pictures of Bateman's injuries that were taken by Bateman's friends at the hospital and an x-ray. One of the pictures is of Bateman's stomach with surgical incisions, and the other picture depicts bullet holes in the side of his stomach. The x-ray is of Bateman's hand, including the finger that was hit by one of the bullets Arriaga fired. Arriaga contends that the probative value of these photographs was substantially outweighed by the danger of unfair prejudice, violating evidentiary Rule 403. Tex. R. Evid. 403.

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). We will uphold a trial court's evidentiary ruling when it is within the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *Powell*, 63 S.W.3d at 438. Additionally, we will uphold the trial court's ruling on the admission of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Under Rule 403, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless

presentation of cumulative evidence.  Tex. R. Evid. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009).  Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).  Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision.  *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000).  When we review a trial court's determination under Rule 403, we reverse the trial court's judgment "rarely and only after a clear abuse of discretion."  *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392).

Photographs generally are admissible if verbal testimony of the matters depicted in the photographs is also admissible as long as their probative value is not outweighed by any unfairly prejudicial effect.[4]  *Potter v. State*, 74 S.W.3d 105, 112 (Tex. App.—Waco 2002, no pet.).  In reviewing a trial court's ruling on the admissibility of photographic evidence, we consider not only the general Rule 403 factors—the probative value of the evidence; the potential to impress the jury in some irrational, yet indelible, way; the time needed to develop the evidence; and the proponent's need for the evidence—but also the following nonexclusive list: the number of exhibits

---

[4]As other courts have done, we treat an x-ray as a type of photograph.  *See Jones v. State*, 111 S.W.3d 600, 607 (Tex. App.—Dallas 2003, pet. ref'd) ("For the purposes of their admission, x-rays are treated as photographs."); *Hall v. State*, 829 S.W.2d 407, 409 (Tex. App.—Waco 1992, no pet.) (reasoning that the definition of photographs under prior rules of evidence included still photographs, x-rays, video tapes, and motion pictures).

offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up shots, whether the body is naked or clothed, the availability of other means of proof, and other circumstances unique to the individual case. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *King v. State*, 189 S.W.3d 347, 355 (Tex. App.—Fort Worth 2006, no pet.).

Here, we have reviewed the complained-of exhibits, and it was well within the zone of reasonable disagreement for the trial court to admit them. Indeed, the exhibits were introduced as Bateman testified about his injuries; thus, the probative value of the exhibits was strong. *See Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991) (holding that if verbal testimony of matters depicted in a photograph is admissible, generally so is the photograph itself). While the three exhibits do show the extent of Bateman's injuries, there is nothing particular about them that would potentially impress the jury in some irrational, yet indelible, way. The time needed to develop this evidence was small given that the exhibits were introduced as Bateman testified. And the State's need for the evidence was strong given that the State bore the burden of proving that Arriaga had used a gun in a manner capable of causing death or serious bodily injury. *See Davis v. State*, 533 S.W.3d 498, 508 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) ("When the State alleges the use of a deadly weapon, it must prove beyond a reasonable doubt that the weapon alleged was used in a manner capable of causing death or serious bodily injury.").

Furthermore, the State only introduced a total of four exhibits as Bateman testified, the two pictures that Arriaga now complains about and two x-rays, one of which Arriaga is complaining about. There is nothing gruesome about the x-ray. And although the pictures of the bullet wounds and surgical site are somewhat gruesome, "they portray no more than the gruesomeness of the injuries inflicted by" Arriaga. *Williams v. State*, 301 S.W.3d 675, 693 (Tex. Crim. App. 2009). The x-ray and the complained-of photographs are black and white, relatively small in size, and not of particularly high quality, and thus the details are minimal. And while all three exhibits are close-up views of the injuries, either externally or internally, there is nothing particularly "naked" about the three exhibits. We conclude that the trial court did not abuse its discretion by admitting the complained-of exhibits. We overrule Arriaga's fourth point.

## C. Arriaga's Sentence

In his fifth point, Arriaga argues that the trial court based his sentence "at least in part on facts that do not appear in evidence." Arriaga takes issue with the trial court's statement, made just prior to pronouncement of his sentence, that Arriaga had been "threatening the police" throughout his years of involvement in the criminal justice system. The State argues that Arriaga has failed to preserve this issue for our review. We agree with the State.

Ordinarily, to preserve an issue for appellate review, an appellant must have first raised the issue in the trial court. Tex. R. App. P. 33.1(a); *see also Gillenwaters v.*

18

*State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006) (discussing Rule 33.1). A sentencing issue may be preserved by objecting at the punishment hearing or when the sentence is pronounced. *See, e.g.*, *Idowu v. State*, 73 S.W.3d 918, 923 (Tex. Crim. App. 2002) (holding that appellant failed to preserve error as to restitution amount by failing to object at the punishment hearing to amount of restitution sought by the prosecution); *Russell v. State*, 341 S.W.3d 526, 527–28 (Tex. App.—Fort Worth 2011, no pet.) (reasoning that appellant failed to preserve Eighth Amendment complaint when he did not object at sentencing). In some instances, an appellant may preserve a sentencing issue by raising it in a motion for new trial. *See, e.g.*, *Bitterman v. State*, 180 S.W.3d 139, 142–43 (Tex. Crim. App. 2005) (holding appellant preserved sentencing issue raised for first time in motion for new trial).

The requirement that an objection be raised in the trial court assumes that the appellant had the opportunity to raise it there. *See Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999) (reasoning that appellant did not allege that he did not have an opportunity to object when sentence was pronounced and so failed to preserve error); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (permitting appellant to raise his objection for the first time in a motion for new trial since "appellant had no opportunity to object to the trial court's action until after that action was taken"). Thus, when an appellate court holds that error has not been preserved, it will often recite the times at which the appellant had the opportunity to

19

object, but failed to do so. *See, e.g.*, *Idowu*, 73 S.W.3d at 920 ("Neither appellant nor his counsel objected at the punishment hearing . . . .").

Here, after the trial court pronounced Arriaga's sentence at the end of the punishment phase, the trial court asked Arriaga whether he understood his sentence and his right to appeal. Arriaga said nothing. The trial court then asked whether the State had any issues with the sentencing, to which the State responded, "Nothing from the State, Your Honor." The trial court then asked defense counsel whether he had any issues with the sentencing, to which defense counsel stated, "No, Your Honor." The trial court then directly addressed defense counsel again and asked, "Was there any reason why sentence should not be pronounced," to which defense counsel replied, "No legal reason." At no time did either Arriaga or his attorney object to the sentence. And Arriaga did not raise a sentencing issue in a motion for new trial. Because Arriaga had the opportunity to object to his sentence but did not do so, he has failed to preserve his sentencing issue for our review.[5] *See id.* We overrule Arriaga's fifth point.

---

[5]Even if Arriaga had preserved his sentencing complaint for our review, he has still failed to demonstrate that his sentence was based on facts not in evidence. As Arriaga acknowledges in his brief, some evidence in the record supports the trial court's statement that he had threatened police officers in the past. Specifically, the State introduced evidence at the punishment phase that Arriaga had once pointed what an officer thought was a gun at the officer. After officers apprehended him, Arriaga yelled at the officers that the gun was in fact a BB gun. Other evidence adduced at the punishment hearing demonstrated that on another occasion, as officers attempted to arrest Arriaga, rather than putting his hands up and coming out of his apartment as officers commanded him, Arriaga began yelling at them to shoot

## D.     Arriaga's Recorded Confession

In his sixth point, Arriaga argues that the trial court erred by denying his motion to suppress his videotaped confession to police. Arriaga complains that his confession was procured "involuntarily as the result of urgings and promises and misrepresentations made by the questioner." We disagree.

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). When reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Once an accused claims his confession is not voluntary, the burden shifts to the State to prove its voluntariness. *See Farr v. State*, 519 S.W.2d 876, 880 (Tex. Crim. App. 1975). A confession is involuntary if the record reflects "official, coercive

---

him. Either of these incidents could be interpreted as "threatening" a police officer. Indeed, in the first instance regarding the BB gun, Arriaga was charged with terroristic threats.

21

conduct of such a nature" that any confession obtained thereby is "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see also Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 521–22 (1986) (reasoning that coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment).

The test is whether the defendant's will was "overborne" by police coercion. *Guardiola v. State*, 20 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see Gomes v. State*, 9 S.W.3d 373, 377–78 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). To make this determination, a court looks at the totality of the circumstances. *Guardiola*, 20 S.W.3d at 223; *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047 (1973); *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997).

In determining the voluntariness of a defendant's statement, police falsehoods are relevant. *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S. Ct. 1420, 1425 (1969); *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). But "[t]rickery or deception does not make a statement involuntary unless the method [is] calculated to produce an untruthful confession or [is] offensive to due process." *Creager*, 952 S.W.2d at 856; *Jeffley v. State*, 38 S.W.3d 847, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Indeed, the effect of a lie "must be analyzed in the context of all the circumstances of the interrogation." *Miller v. Fenton,* 796 F.2d 598, 607 (3rd Cir. 1986). Similarly,

22

misrepresentations which do not interject extrinsic considerations that would overcome a defendant's will to confess or remain silent are generally permissible. *Compare Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986) (holding that inflating evidence of the defendant's guilt did not interfere with the defendant's choice of whether to confess), *with Lynumm v. Illinois*, 372 U.S. 528, 531, 83 S. Ct. 917, 919 (1963) (holding that misrepresentation that failure to confess would result in loss of welfare benefits and custody of children rendered confession coerced).

In this case, Arriaga claims his confession was involuntary because the interviewing officer induced him to confess (1) by telling him he would be straight with Arriaga, but instead the officer lied about why he was late to the interview and about not having already spoken with Arriaga's brother; (2) by expressing that Arriaga's telling the truth would go a long way; and (3) by asking for Arriaga's phone number, ostensibly implying that Arriaga might be released after confessing.

The interviewing officer's statements regarding why he was late to the interview and whether he had spoken with Arriaga's brother amounted to nothing more than trickery, deception, or misrepresentations. They did not rise to the level to offend due process, and Arriaga has pointed to nothing in the record indicating that such trickery was calculated to produce an untruthful confession. *See Rodriquez v. State*, 934 S.W.2d 881, 890–91 (Tex. App.—Waco 1996, no pet.) ("The fact that the interrogating officers falsely stated to Rodriquez that the victim, on his deathbed, identified him as the assailant does not support a finding that the confession was involuntarily given.");

23

*Snow v. State*, 721 S.W.2d 943, 946 (Tex. App.—Houston [1st Dist.] 1986, no pet.) ("[V]oluntariness is not destroyed, and a confession induced by deception or trickery is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process.").

Likewise, the interviewing officer's statement that Arriaga's telling the truth would go a long way does not render his confession involuntary. *See Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983) ("A confession is not rendered inadmissible because it is made after an accused has been told by the officer taking the confession that it would be best to tell the truth."); *see also Coleman v. State*, 440 S.W.3d 218, 223 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[G]eneral statements made to a suspect regarding how a confession can sometimes result in leniency do not render a confession involuntary."). Furthermore, as the State points out, Arriaga declined to answer some of the interviewing officer's questions, indicating that his confession was voluntary. *See Joseph v. State*, 309 S.W.3d 20, 26 (Tex. Crim. App. 2010) ("Moreover, the fact that Appellant felt free to decline answering particular questions suggests that the information he did choose to provide was given voluntarily."). And Arriaga has provided no authority to support his proposition that an interviewing officer's asking for a suspect's phone number equates to coercion.

Viewing the evidence in the light most favorable to the trial court's ruling and considering the totality of the circumstances surrounding Arriaga's confession, we conclude that the trial court did not err by finding that his confession was made

voluntarily. *See Kelly*, 204 S.W.3d at 818. Thus, the trial court did not err by denying Arriaga's suppression motion and by admitting his confession. We overrule Arriaga's sixth point.

**E.     No Voluntariness Instruction in Jury Charge**

In his seventh point, Arriaga argues that the trial court reversibly erred by failing to sua sponte give an instruction regarding the voluntariness of his confession. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (detailing how a trial court is to address the voluntariness of an accused's confession and when to submit a jury instruction regarding such).

Under Article 38.22, Section 6, there is no error in refusing to include a jury instruction, sua sponte or otherwise, when there is no evidence before the jury to raise the issue. *Miniel v. State*, 831 S.W.2d 310, 316–17 (Tex. Crim. App. 1992); *Hernandez v. State*, 819 S.W.2d 806, 812 (Tex. Crim. App. 1991). Some evidence must have been presented to the jury that the defendant's confession was not given voluntarily. *Alvarado*, 912 S.W.2d at 211 n.9; *Hernandez*, 819 S.W.2d at 812. It is not enough that the issue is raised by the introduction of a confession; rather, the issue must have been "litigated" in order for Article 38.22, Section 6 to be considered "the law applicable" to the case. *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008).

Here, the only "evidence" that Arriaga points to in his brief as having been before the jury is his videotaped confession, which he argues was scattered with evidence of its involuntariness. But Arriaga neither directs us to any evidence, nor has

25

this court located any, in which he suggested before the jury that his recorded confession was involuntary. This court has held that when a defendant fails to put on any evidence of the involuntariness of his confession aside from the confession itself, the voluntariness of a confession was not litigated. *Flenoy v. State*, No. 02-11-00270-CR, 2012 WL 2579548, at *5 (Tex. App.—Fort Worth July 5, 2012, pet. ref'd) (mem. op., not designated for publication) ("Because Flenoy offered no such evidence, a reasonable jury could not have concluded that the statement was involuntary, and the trial court was therefore not required to give the jury an [A]rticle 38.22, [S]ection 6 instruction."). We overrule Arriaga's seventh point.

## F. Findings of Fact and Conclusions of Law

In his eighth point, Arriaga argues that the trial court erred by failing to file written findings of fact and conclusions of law regarding the voluntariness of his confession. Arriaga again argues that this failure violated Article 38.22, Section 6. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6. But as the State points out, a trial court satisfies the edicts of Article 38.22, Section 6, when it dictates its findings of fact and conclusions of law regarding a voluntariness-of-a-confession finding to the court reporter, and they are later transcribed and made part of the appellate record. *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).

Here, at the conclusion of the suppression motion, the trial court orally dictated its findings of fact and conclusions of law to the court reporter, and they are now part of the appellate record. Thus, the trial court did not err by not filing written

26

findings of fact and conclusions of law regarding the voluntariness of Arriaga's confession. *See id.* We overrule Arriaga's eighth point.

## IV. CONCLUSION

Having overruled all eight of Arriaga's points on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 19, 2019